# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————————

### Case No. 23-50714

———————————

### No. 23-50664
### consolidated with
### No. 23-50714

———————————

### UNITED STATES OF AMERICA,
### Plaintiff - Appellee,

v.

### MARK JOSEPH UHLENBROCK,
### Defendant - Appellant

———————————

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

———————————

## INITIAL BRIEF OF APPELLANT
## CRIMINAL APPEAL

———————————

**Shannon W. Locke**
**The Locke Law Group**
**By:** **/s/ Shannon W. Locke**
**Shannon W. Locke**
**The Locke Law Group**
**15160 San Pedro Avenue**
**San Antonio, Texas 78232**
**210.229.8300 (Tel)**
**214.229.8301 (Fax)**
**Texas State Bar No. 24048623**
**Attorney for Defendant-Appellant**

# CERTIFICATE OF INTERESTED PERSONS

I certify that the following individuals may have an interest in the outcome of this case. I make these representations in order that the members of this Court may evaluate possible disqualifications or recusal.

| | |
|---|---|
| District Judge: | Honorable Xavier Rodriguez |
| Appellant/Defendant: | Mark Uhlenbrock |
| Appellee/Plaintiff: | United States of America |
| Attorney for Appellant/Defendant: | Shannon W. Locke<br>Kim Gonzalez |
| United States Attorney for<br>The Western District of Texas: | Jaime Esparza |
| Assistant U.S. Attorney for<br>The Western District of Texas: | William F. Calve<br>Karina O'Daniel |

/s/ Shannon W. Locke

Shannon W. Locke

## STATEMENT REGARDING ORAL ARGUMENT

A jury found Appellant guilty of reasonably expecting to cause substantial emotional distress pursuant to 18 USC § 2261A(2)(B), even though Appellant never directly contacted the alleged victim during the time periods outlined in the indictment. Appellant's conviction raises substantial constitutional issues of first impression related to the First Amendment and the Fifth Amendment Due Process Clause. These arguments were raised and overruled in the lower court. Oral argument will assist the Court in resolving the questions presented by these issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ................................................ ii

TABLE OF CONTENTS .................................................................................... iii

TABLE OF AUTHORITIES ...............................................................................v

SUBJECT MATTER AND APPELLATE JURISDICTION ....................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................2

STATEMENT OF THE CASE ...........................................................................2

    I.   Facts and Proceedings Below ................................................................2

    II.  Summary of Argument ........................................................................10

ARGUMENT .................................................................................................13

    I.  Appellant's Conviction That Involves No Direct Contact with a Complaining Witness is an Issue of First Impression and a Violation of the First Amendment after the United States Supreme Court's Holding in *Counterman v. Colorado* ..13

        A.    Standard of Review ..................................................................13

        B.    Discussion ..............................................................................13

           1.  Appellant's speech is not a "true threat" ..............................16

           2.  Appellant's speech is not deprived of First Amendment protection on grounds aside from true threats ..................................................19

           3.  Arguments that Appellant's speech was private and therefore not eligible for First Amendment protections are not persuasive ..................................22

    II.  18 USC § 2261A(2)(B) Is Unconstitutionally Vague in That It Does Not Define Not Provide Any Standard to Determine What Constitutes Substantial Emotional Distress ................................................................................26

        A.    Standard of Review ..................................................................26

         B.    Argument ................................................................................26

           1.  18 USC § 2261A(2)(B) is vague on its face with respect to what constitutes substantial emotional distress ..................................27

           2.  18 USC § 2261A(2)(B) is vague as-applied to Appellant's course of conduct. ..................................................................................29

III.   The Erroneous Admission of Prior Bad Acts Evidence Deprived Appellant of His Due Process Rights ...................................................................34

    A.   Standard of Review..................................................................34

    B.   Discussion ..............................................................................34

       1.   The government exceeded the boundaries of admissible prior bad acts evidence as authorized by the court's balancing analysis...........................35

       2.   The past crimes and wrongdoings evidence were misinterpreted as forming part of the "course of conduct" under analysis in the jury's deliberations and as such deprived Appellant of his Due Process rights and right to be free from Double Jeopardy .........................................39

IV.   The Evidence Below Was Insufficient to Sustain Appellant's Conviction..43

    A.   Standard of Review..................................................................43

    B.   Discussion ..............................................................................44

       1.   Sufficient evidence did not exist to find requisite intent contemplated by 18 USC § 2261A(2)(B) ...............................................................46

       2.   There was not sufficient evidence to find "substantial emotional distress" under 18 USC § 2261A(2)(B) ...................................................48

V. The Lower Court Erred When It Refused to Provide Appellant's Proposed Jury Instructions ...................................................................................50

    A. Standard..................................................................................50

    B. Discussion ...............................................................................50

CONCLUSION .....................................................................................53

CERTIFICATE OF SERVICE ................................................................54

CERTIFICATE OF COMPLIANCE .......................................................55

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Abell v. Potomac Ins. Co.*, 946 F.2d 1160 (5th Cir. 1991) .......................................27

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942) ......................................25

*Chapman v. United States*, 500 U.S. 453 (1991) ......................................................27

*Connick v. Myers*, 461 U.S. 138, 147 (1982) .............................................................23

*Counterman v. Colorado* 143 S.Ct. 644 (2023) ............................................... passim

*Elonis v. United States*, 575 U.S. 723, 135 S. Ct. 2001 (2015) ...............................16

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974)............................................24

*Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551 (2015) ....11, 27, 28, 30, 31

*Kolender v. Lawson,* 461 U. S. 352, 357-358, 103 S. Ct. 1855 (1983) ...................33

*Michelson v. United States*, 335 U.S. 469, 476 69 S. Ct. 213 (1948).....................35

*Miller v. California*, 413 U.S. 15, 24, 93 S. Ct. 2607 (1973) ..................................45

*New York Times Co. v. Sullivan*. 376 U.S. 254, 271 (1963)....................................20

*New York v. Ferber*, 458 U.S. 747, 759 (1988).........................................................22

*Old Chief v. United States*, 519 U.S. 172, 185 117 S. Ct. 644 (1997) ............. 37, 39

*Rankin v. McPherson*, 483 U.S. 378, 107 S. Ct. 2891 (1987) .................................24

*Reno v. ACLU*, 521 U.S. 844, 872 117 S. Ct. 2329 (1997).....................................24

*Sessions v. Dimaya*, 138 S.Ct. 1204 (2018) ...................................................... 28, 33

*Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207 (2011) .........................................24

*Sorrell v. IMS Health*, Inc., <u>564 U.S. 552, 576</u> (2011)................................................25

*Texas v. Johnson,* <u>491 U.S. 397, 414</u> (1988) ................................................25

*United States v. Ackell* <u>907 F.3d 67</u> (1st Cir. 2018) .............................. 15, 16, 27, 45

*United States v. Arrieta*, <u>862 F.3d 512, 514</u> (5th Cir. 2017) ............................. 13, 26

*United States v. Beechum*, <u>582 F.2d 898, 910</u> (5th Cir. 1978) ......................... 35, 37

*United States v. Cassidy*, <u>814 F.Supp.2d 574</u> (D. Md. 2011)...................................14

*United States v. Clark*, <u>582 F.3d 607, 612</u> (5th Cir. 2009)............................. 13, 26

*United States v. Conlan* <u>786 F.3d 380</u>, (5th Cir. 2015) .................................... passim

*United States v. Floyd*, <u>343 F.3d 363</u> (5th Cir. 2003)................................................43

*United States v. Giraldi*, <u>86 F.3d 1368, 1376</u> (5th Cir. 1996).................................51

*United States v. Hernandez-Guevara*, <u>162 F.3d 863, 869</u> (5th Cir. 1998)...............34

*United States v. Mitchell*, <u>166 F.3d 748</u> (5th Cir. 1999) ...........................................34

*United States v. Monroe*, <u>178 F.3d 304, 308</u> (5th Cir. 1999) ..................................26

*United States v. Nguyen*, <u>28 F.3d 477, 483</u> (5th Cir. 1994)......................................41

*United States v. Paul*, <u>142 F.3d 836, 844</u> (5th Cir. 1998) .......................................39

*United States v. Petrovic*, <u>701 F.3d 849, 853</u> (8th Cir. 2012) ..................................15

*United States v. Ragsdale*, <u>426 F.3d 765, 770</u> (5th Cir. 2005)................................44

*United States v. Shrader*, <u>675 F.3d 300</u> (4th Cir. 2012) .................................. 17, 47

*United States v. Stevens* <u>559 U.S. 460</u> (2010)................................................... 22, 26

*United States v. Strom*, <u>36 F.3d 1289</u> (5th Cir. 1994) .............................................50

*United States v. Vargas-Ocampo*, 747 F.3d 299 (5th Cir. 2014)..............................44

**OTHER AUTHORITIES**

Fed. R. Evid. 404(b)........................................................................37

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Am. V...........................................................................26

U.S. Const. Am. I............................................................................25

**STATUTES**

18 USC § 2261A ......................................................................passim

## SUBJECT MATTER AND APPELLATE JURISDICTION

1.      **Subject Matter Jurisdiction in the District Court.** This case arose from the prosecution of an offense against the laws of the United States of America. The district court had jurisdiction of this case under 18 U.S.C. § 3231.

2.      **Jurisdiction in the Court of Appeals.** This is a direct appeal from a final decision of the U.S. District Court for the Western District of Texas, San Antonio Division, entering judgment of conviction and imposing a criminal sentence. This Court has jurisdiction of the appeal under 28 U.S.C. §1291 and 18 U.S.C. §3742. Notice of appeal was timely filed in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

ISSUE ONE: Does prosecuting Appellant solely under the substantial emotional distress prong of 18 USC § 2261A(2)(B) violate the First Amendment when Appellant never directly contacted or threatened the alleged victim?

ISSUE TWO: Does prosecuting Appellant exclusively under the substantial emotional distress prong of 18 USC § 2261A(2)(B) violate Due Process because the statute is vague on its face and in its application to Appellant?

ISSUE THREE: Were Appellant's fundamental Due Process rights violated due to the erroneous admission of prior bad acts evidence?

ISSUE FOUR: Whether the evidence presented in Appellant's case was sufficient for a rational juror to convict Appellant under 18 USC § 2261A(2)(B)?

ISSUE FIVE: Did the court below err in refusing to provide Appellant's proposed jury instructions?

## STATEMENT OF THE CASE

### I.    Facts and Proceedings Below

On February 24, 2021, Appellant was indicted on one count of Internet Stalking occurring between May 2020 to September 2020 with respect to the

complaining witness in this case: YT.[1] Appellant filed a Motion to Dismiss and Memorandum of Law in Support of Such Motion. (ROA.23-50714.64) In that Motion, Appellant presented constitutional arguments supporting the dismissal of the indictment, specifically, that the prosecution violated his First Amendment rights and further that the statute was unconstitutionally vague both facially and as applied.

The United States responded, arguing that *inter alia,* Appellant was precluded from making his challenge due to a prior guilty plea. (ROA.23-50714.94) Alternatively, the government argued that the Fifth Circuit had previously rejected Appellant's Fifth Amendment Due Process vagueness argument in *United States v. Conlan* 786 F.3d 380, (5th Cir. 2015). (ROA.23-50714.95) The government then argued that, every circuit that had considered a vagueness challenge had rejected it and claimed that the statute met both *Skilling* factors. (ROA.23-50714.96) The government then ran through a litany of Internet Stalking cases describing how each case had survived a vagueness challenge. (ROA.23-50714.96) Tellingly, the government did not analyze how those cases were similar to or distinguishable from the case at hand. (ROA.23-50714.96) Ultimately, the court below denied Appellant's

---

[1] The complaining witness' full name is present in the trial transcript. However, to maintain her privacy the initials used in the Government's indictment will be used throughout Appellant's brief. See (ROA.23-50714.377). See also (ROA.23-50714.14). However, it should be noted the posts attributed to Appellant referred to the complaining witness by a name different from her legal name. See (ROA.23-50714.344).

Motion to Dismiss, relying heavily on *Conlan*[2] and *Ackell*. (ROA.23-50714.108) Appellant filed a subsequent Motion to Dismiss the Indictment alleging that the statute was overbroad in violation of the First Amendment, which was denied shortly before trial. (ROA.23-50714.225, ROA.23-50714.678-80, ROA.23-50714.10 (noting the entry of a text-only order denying the motion).)

After losing his bid to dismiss the Indictment, the government noticed its intention to introduce evidence pursuant to FRE 609 and 404(b) related to prior postings that Appellant made regarding YT. (ROA.23-50714.181-187) Appellant objected to the introduction of this evidence. (ROA.23-50714.248) Ultimately, the court below allowed the evidence to be admitted. (ROA.23-50714.684).

Appellant proceeded to a jury trial which commenced on May 15, 2023. (ROA.23-50714.309) During opening statement the government made it clear YT became aware of Appellant's posting her "intimate" pictures after spending "hours and hours trying to track down every single image of her that was out there." (ROA.23-50714.318-19) Appellant stated in his opening that despite engaging in alleged the course of conduct, he never wanted YT to discover that he posted the

---

[2] Appellant contends that the trial court, in denying Appellant's motion, mis-characterized his argument regarding why *Conlan* was not binding on the trial court in deciding to dismiss and its relation to *Johnson* as set forth in greater detail below.

pictures in question. (ROA.23-50714.323) His intent was not to harass and owing to that, Appellant took pains to prevent YT from discovering the pictures. (ROA.23-50714.323)

FBI Special Agent James Thompson testified as the government's first witness. In June of 2020 when YT discovered nude pictures of herself on the internet, she approached Thompson because he was the same FBI agent who had previously investigated and been involved in the prosecution of Appellant. (ROA.23-50714.383)

The materials received by Thompson from YT portrayed YT in the nude and told stories about her sexual exploits in the first person claiming that she was an "exhibitionist" and a "serial masturbator." (ROA.23-50714.326-7) In his testimony, Thompson described the various Reddit accounts used to publish the sexually explicit material. (ROA.23-50714.328) After reviewing the material Agent Thompson decided to open an investigation to determine who was posting the material more than three months after YT had initially brought the postings to his attention. (ROA.23-50714.333, 337) Once Thompson began his investigation, he found a picture of YT that had been posted eighteen (18) hours before, and another that had been posted 12 days prior. (ROA.23-50714.338-39) When Agent Thompson visited the profile "nihongaijiner" he discovered four other pictures of YT in that profile's posting history. (ROA.23-50714.340) Agent Thompson's investigation

revealed the images had been posted 25 hours, 18 hours and six days prior to his discovery of them. (ROA.23-50714.341-42) Agent Thompson also described a collage that referenced the complaining witness' occupation and previous name. (ROA.23-50714.343-44) When Agent Thompson compared the images to the images previously provided by YT, he found that they "have the same characteristics, same images, the stories are written in identical format. (ROA.23-50714.347)

As a result of this investigation Thompson issued a subpoena to Reddit for the account information associated with the posts in question. (ROA.23-50714.347-48) As was explained an IP (Internet Protocol) is a unique identifying address for "each computer connected to a network, in this case the internet." (ROA.23-50714.348) During his testimony Thompson described how he determined which ISP (Internet Service Provider) owned which IP address and the subscriber associated with that IP address. (ROA.23-50714.359-361) As a result, the Reddit accounts azianfanatic, nihongaijiner, and semorehiney were associated with an IP address that was in turn associated with Appellant. (ROA.23-50714.362-65 and ROA.23-50714.368-69). The nycthrowaway Reddit account, however, came back to an IP address in Albany, New York. (ROA.23-50714.365)

After Thompson testified that his investigation identified Appellant as the operator of these accounts, he revealed to the jury that he had previously investigated Appellant for the "same conduct" beginning in 2013 and also involving YT.

(ROA.23-50714.371-72)[3] During the 2013 investigation, Thompson testified that Appellant had "confessed to me that he was engaging in that behavior, that he was using Reddit, amongst other sites. He confirmed usernames that I was interested in 2015. He confirmed those specific usernames, and that he had been doing this for a number of years." (ROA.23-50714.372)

Thompson further testified that Appellant had obtained the pictures during a consensual romantic relationship between Appellant and YT. (ROA.23-50714.373). In 2016, Appellant pled guilty to Stalking due to his prior investigation. (ROA.23-50714.374)

During cross-examination Thompson admitted to having known YT for seven years. (ROA.23-50714.380) He also admitted to knowing that Appellant had pled guilty and was on supervised release when Thompson was contacted by YT in June of 2020. (ROA.23-50714.380-1) Thompson conceded that he made no effort to have the posts in question removed from Reddit. (ROA.23-50714.384)

On re-direct Thompson explained why he didn't act more quickly with respect to Appellant's conduct, "if there was someone in grave danger or some sort of sense of physical urgency that someone was going to be hurt or killed, I might do [arrest

---

[3] Appellant continued his objection to the introduction of prior bad acts evidence. (ROA.23-50714.369)

the person or notify their supervised release officer of a violation], but in this instance, there was time to verify the information through the sending of subpoenas and that sort of thing." (ROA.23-50714.390)

The government then called YT to testify. (ROA.23-50714.393) She described her relationship with Appellant as it evolved from co-workers to romantic partners. (ROA.23-50714.394-395) While YT had consented to the taking of nude pictures and videos, she did not want them shared with others. (ROA.23-50714.397) YT testified, over Appellant's objection, that when she discovered that Appellant had been sharing her pictures and that Appellant attempted to take surreptitious photographs of her, their relationship ended. (ROA.23-50714.401)

YT testified generally about the impacts that the postings had on her mental state. (ROA.23-50714.403-05) During YT's testimony several objections were lodged with respect to the government exceeding the scope what it had indicated it was interested in exploring and was allowed to explore by the Court regarding admissible 404(b) and prior bad act evidence. After those objections were overruled, Appellant moved for a mistrial, which the Court denied. (ROA.23-50714.409) YT continued to testify about her affirmative efforts to uncover the postings and the impacts that her searching for and finding additional posts had on her. (ROA.23-50714.409-11). YT additionally described the posts, at least one of which contained the name of the airline she worked for, and which generally contained photos and

videos of herself that were sexually explicit and/or suggestive. (ROA.23-50714.417-426).

YT believed the posts were made by "Mark" because he was the only one who had possession or custody of "those photographs". (ROA.23-50714.426) YT then googled the Reddit username associated with these posts (and who she suspected was Appellant) and the term "Flight Attendant." The resulting Google search produced Appellee's Exhibit 19. (ROA.23-50714.426) YT put together a packet and sent it to Agent Thompson. (ROA.23-50714.427)

YT then described her family life and admitted that she now has a different last name. (ROA.23-50714.428) In fact, she had used two other last names prior to the one she was using at the time of the trial. (ROA.23-50714.428) YT then testified that the stories she found in June of 2020 were lengthier and more graphic than what she had seen in the past and the photographs had "evolved". (ROA.23-50714.429). The Government then rested. (ROA.23-50714.431)

During the jury instruction conference a dispute arose between the government and Appellant regarding the intent instruction. (ROA.23-50714.449) Appellant argued that the jury should be instructed that,

> To act with "intent" means to act with the specific intent or purpose of causing the desired result in an individual. It is not sufficient that an individual might or does foresee that such a result is a likely consequence of any action, but rather the individual must intend the specific result. In this context, the government must prove beyond a

reasonable doubt that the Defendant intended to harass the complaining witness as opposed to being motivated by some other reason. It is not sufficient that the Defendant have some other bad or improper motive. (ROA.23-50714.246)

Appellant argued that the above language was necessary because without it would be possible for the jury to convict Appellant merely for intentionally posting the pictures and not for the intent of harming the complainant in the manner proscribed by the statute. (ROA.23-50714.449-451) The court below denied Appellant's request and agreed with the government. (ROA.23-50714.451)

After the jury was instructed, they deliberated and found Appellant guilty of the single count in the Indictment. (ROA.23-50714.484) The court below sentenced Appellant to 60 months of imprisonment to be run consecutively with 5:16-CR-389. (ROA.23-50714.296-297). Appellant timely-filed his Notice of Appeal (ROA.23-50714.302), and the instant brief results.


## II.     Summary of Argument

Appellant's indicted course of conduct consisted of a series of public but anonymous postings to Reddit, which were not sent directly to the complaining witness and none of which contained any material threatening harm, injury, or violence. The recent Supreme Court *Counterman* decision centered on a prosecution under a similar cyberstalking statute required that the State prove the defendant's

speech met a "true threat" standard that included at least a state of mind of recklessness. The federal statute prosecuted in this case requires a lower state of mind, a reasonable expectation of substantial emotional distress, that is now unconstitutional after *Counterman*. Therefore, Appellant's conviction here cannot stand.

In addition, the "substantial emotional distress" prong of 18 USC § 2261A(2)(B) under which Appellant was exclusively tried and convicted is unconstitutionally vague in its application to Appellant's course of conduct. While this court rejected a vagueness challenge to 18 USC § 2261A in *United States v. Conlan*[4], 786 F.3d 380, 384 (5th Cir. 2015), the conduct in *Conlan* involved direct communication with the victim and speech that represented a true threat to that victim's life and safety, factors which were not present in Appellant's course of conduct. Additionally, the recent decision *Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551 (2015) renders 18 USC § 2261A(2)(B) unconstitutionally vague as applied to Appellant's prosecution. If Appellee's prosecution survives a First Amendment challenge it cannot survive a Fifth Amendment facial vagueness challenge or a vagueness challenge as applied to Appellant's conduct.

_____

[4] The Fifth Circuit applied a plain error review of the conviction in *Conlan* a lower standard then the standard Appellant is entitled to in the present case.

Appellant's trial focused so heavily on past crimes and wrongdoings that the trial was hopelessly colored and confused by the allegations of extraneous conduct: it was especially harmful here because Appellant's indictment limited the "course of conduct" to actions between May and September of 2020. Appellant moved for a mistrial when the government exceeded even the wide latitude for 404(b) testimony the Trial Court had allowed; attempts to cure the government's error with further jury instructions were insufficient, and Appellant's conviction should be reversed on these grounds as well.

The evidence below was also insufficient for a rational trier of fact to find Appellant guilty of the offense charged with respect to the intent element delineated by the statute 18 USC § 2261A(2)(B) itself. The evidence established that Appellant's anonymous postings were not directed at YT and were only discovered by YT's own investigation. Further, evidence suggests that Appellant took pains to prevent YT from discovering the same, undermining the conclusion that he intended to harass YT to such a degree that no reasonable juror could have concluded that Appellant reasonably expected to cause substantial emotional distress and thus his conviction should be vacated.

Finally, the lower court erred when it denied Appellant's proposed jury instructions with respect to the timeline of the alleged criminal conduct as well as Appellant's proposed instructions with respect to intent. The former allowed the jury

to convict Appellant on the basis of past conduct that was alleged in the Indictment, and the latter permitted the jury to convict Appellant on a basis other than intent to the Appellant.

## **ARGUMENT**

### **I. Appellant's Conviction That Involves No Threats or Direct Contact is an Issue of First Impression and a Violation of the First Amendment after the United States Supreme Court's Holding in *Counterman v. Colorado***

#### **A. Standard of Review**

The denial of a motion to dismiss is reviewed *de novo*. See *United States v. Arrieta*, 862 F.3d 512, 514 (5th Cir. 2017); *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009). The issues discussed herein were preserved by Appellant's Motions to Dismiss the Indictment below. (ROA.23-50714.64-78, 225-228).

#### **B. Discussion**

When Appellant filed his motion to dismiss below, he argued that his prosecution was unconstitutional under the First and Fifth Amendments of the United States Constitution. (ROA.23-50714.64-78) Appellee responded by claiming that Appellant's arguments had been rejected by the Fifth Circuit and every other Circuit that had examined the issue. (ROA.23-50714.94) Yet this Court has never encountered a case where the conduct at issue neither involved threats of harm, nor direct contact with the complaining witness. Appellant's sole course of conduct consists exclusively of public posts to a bulletin-board type site Reddit – and no

evidence was presented which suggested that Appellant ever intended for YT to see these postings. He never used her current name, or even the name she was using when she previously testified against him, and only occasionally referenced her maiden name and employer. Appellant thus has been convicted under the cyberstalking statute only because the subject of his posts undertook her own investigation and discovered the decades-old photos of her. All that was needed was to avoid distress would have been to not scour the internet looking for material she found objectionable. *See United States v. Cassidy*, <u>814 F.Supp.2d 574</u> (D. Md. 2011) (dismissing cyberstalking indictment involving posts to social media and blogs).

In response to Appellant's argument, the government claimed that Appellant's First Amendment arguments had been previously rejected by the Fifth Circuit and other circuit cases. However, a review of the relevant case law reveals that Appellant's conduct is distinguishable from those precedents and the differences demonstrate why Appellant's prosecution should be barred by the First Amendment.

In *United States v. Conlan*, <u>786 F.3d 380, 384</u> (5th Cir. 2015), the defendant's "year-long campaign of email, text-message, social-media, telephonic, and face-to-face contact with [the complaining witness], her family, work colleagues, and church members. Many of the messages were hateful, threatening, and graphically sexual" was sufficient to justify his Constitutionally valid prosecution under <u>18 USC § 2261A(2)(B)</u>. *Id. at* 384.

In *United States v. Petrovic*, <u>701 F.3d 849, 853</u> (8th Cir. 2012), the defendant extorted his victim telling her that he would "ruin [her] life" if "she did not get back together with [him]," and he followed through, creating a website and sending direct mailings to family members and community members. *Petrovic* at 853-54. Appellant engaged in no such conduct in this case.

In *United States v. Ackell* <u>907 F.3d 67</u> (1st Cir. 2018), the defendant refused to let the complaining witness out of their relationship. He threatened her that if she stopped sending photos to him, "he would disseminate photos of her that he had saved among her friends, classmates, and family." *Ackell* at 71. Essentially, he blackmailed her. Ackell conceded, unlike Appellant, that <u>18 USC § 2261A(2)(B)</u> could be Constitutionally applied to him but was generally unconstitutionally overbroad. *Id.*

The First Circuit rejected Ackell's claim finding that <u>18 USC § 2261A(2)(B)</u> was not overbroad on its face. It wrote, "[b]y its own terms, § 2261A(2)(B) regulates not speech, but conduct -- or, to be precise, 'course[s] of conduct.' 'Conduct,' of course, may also enjoy First Amendment protection if it is 'sufficiently imbued with elements of communication.'" *Id.* at 73. In *Ackell* the prosecuted conduct was communication from the accused directly to the alleged victim threatening to release intimate images if she did not meet the accused's demands. See *Ackell* at 71. As the First Circuit in *Ackell* stated, "the law is clear in that it targets conduct, specifically

'conduct performed with serious criminal intent,' rather than speech protected by the First Amendment." *Id.* at 74 (cleaned up).

The United States Supreme Court's recent decision *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106 (2023) provides further clarity on this issue. In *Counterman*, the Supreme Court found that the accused must have a subjective understanding of the threatening nature of the criminalized communication. *Id.* at 2111. This subjective understanding was satisfied by a reckless mental state. *Id.* at 2112. It was sufficient, according to *Counterman* if the accused consciously disregarded a substantial risk that his communication would be viewed as threatening violence. *Id.* Here, none of Appellant's speech involved threats of any kind as set forth below.

### 1. *Appellant's speech is not a "true threat"*

In *Elonis v. United States*, 575 U.S. 723, 135 S. Ct. 2001 (2015), the Supreme Court discussed the criteria that transforms threats into a "true threat." The *Elonis* Court elaborated the meaning of "true threat" using various plain and legal dictionaries: finding, "it must "convey[…] the notion of an intent to inflict harm." *Id.* at 732.

The intent section of 18 USC § 2261A(2)(B), however, only required that the jury find an "'intent to harass' (ie. 'to disturb persistently; torment, as with troubles

or cares; bother continually; pester; persecute[]'" *United States v. Shrader*, <u>675 F.3d 300</u> (4th Cir. 2012). After *Counterman*, the Supreme Court requires a minimum *mens rea* of recklessness which in terms of threats is the requirement that "a speaker is 'aware that others could regard his statements as' *threatening violence* and 'delivers them anyway.'" *Counterman v. Colorado,* <u>600 U.S. 66</u>, <u>143 S. Ct. 2106, 2117</u> (2023), citing *Elonis*, 575 U. S., at 746, <u>135 S. Ct. 2001</u>

      Within <u>18 USC § 2261A(2)(B)</u>, there is also an implied *mens rea* component in third element of Appellant's charge, requiring that (if the course of conduct did not actually "cause" or "attempt[] to cause" substantial emotional distress) it "would be [need to at least be] *reasonably expected* to cause substantial emotional distress" (emphasis added). The *mens rea* standard implied by this part of the statute is significantly less than that discussed by the *Counterman* court. First, causing "substantial emotional distress" is not equivalent to threatening ("to threaten" denotes a clear intention to "inflict harm" or "violence," while causing "substantial emotional distress" would sweep up a much larger swath of speech acts). Second, the language here – referring to a "reasonable expectation" that the conduct would cause substantial emotional distress – tracks a *mens rea* of a reduced negligent standard, not the recklessness that *Counterman* has required. (The Supreme Court identifies negligent liability as one that "depend[s] not on what the speaker thinks,

but instead on what a *reasonable person* would think" about his speech. *Counterman,* 600 U.S. at n.5 (emphasis added).)

Nowhere within Appellant's postings to Reddit is there expressed any desire to "inflict harm." There was no threatening discussion of violence or injury (physical or otherwise) mentioned here; nor was there any extra-textual content that Appellant sent directly to YT, or her family members, friends or colleagues. Appellant never threatened or notified her that if she did not do what he wanted he would release the photographs. All that is contained within Appellant's "course of conduct" is the posts themselves: and in prosecuting this case, the Government made no efforts to construe the posts to contain any material that could constitute a "true threat" as defined by its objective criteria.

As the above case law indicates 18 USC § 2261A(2)(B) has typically criminalized the direct communication of a threat. In no other prosecution, has substantial emotional distress by itself, without a direct communication of imminent personal harm been prosecuted. Here, Appellant is being held to a lesser standard than was articulated in *Counterman*. According to his indictment he need only have "reasonably expected to cause substantial emotional distress" to be guilty of the offense. Traditionally, this statute has been used appropriately to criminalize the substantial emotional distress of having your life, or personal safety threatened.

Appellant's actions do not rise to this level and thus his prosecution is unconstitutional.

2.  *Appellant's speech is not deprived of First Amendment protection on grounds aside from true threats*

Even if the *Counterman* decision would allow prosecution of speech beyond "true threats" (which is not conceded), it does not follow that the terms of the statute itself were enough to justify any prosecution of speech without violating the First Amendment. The Government identified a set of potentially "relevant" classes that could provide the legal justification to enable prosecutions under the cyberstalking statute: "'true threats' [and] 'speech integral to criminal conduct'" (ROA.23-50714.99, quoting *United States v. Ackell*, 907 F.3d 67, 75 (1st Cir. 2018)), as well as "defamation" (ROA.23-50714.99, quoting *United States v. Gonzalez*, 905 F.3d 165, 194 (3d Cir. 2018)). Appellant's speech can in no way be construed to constitute a threat. Neither can it be found that his speech was defamatory nor was it "integral to criminal conduct".

a)  *Appellant's speech was not defamatory or libelous*

The government alleges that Appellant's course of conduct included the posting of "lurid stories that describe the victim, her name, profession, etc., since 2006." (ROA.23-50714.101). Again, as noted above, Appellant never referred to YT

with the name that she was currently using, rather it was a name that she had used nearly twenty years before. (ROA.23-50714.427-8) The burden of asserting libel or defamation is on the party making the assertion, requiring them to prove the "falsity of some of [the writing's] factual statements [and] its alleged defamation of respondent." *New York Times Co.* v. *Sullivan*. 376 U.S. 254, 271 (1963).[5]

The stories Appellant posted to Reddit were never presented to the public as "factual statements." The stories were written in "the first person as if she wrote them" (ROA.23-50714.327); the content contained a series of "lurid stories" (ROA.23-50714.101), involving such fantasies of "serial exhibitionis[m]" (ROA.23-50714.327). Nothing within the postings contains any type of specific statement that could be tested for truth or falsehood – rather, the text consists of what the prosecution concedes are "lurid stories"; the government in prosecuting this case never tries to pin down a specific false statement that could be categorized as libelous or defamatory.

Further, Appellant did not refer to YT by her contemporaneous name and so it was not easy to connect the contents and descriptions of the stories and photos to

_____

[5] What separates defamation/libel of a public figure vs. defamation/libel of a private individual is the liability standard: in the cases of private individuals, as we have here, the party asserting libel or defamation only needs to prove that – in making a libelous statement – some standard of care beyond "liability without fault" (eg. negligence) was violated. *Gertz v. Robert Welch*, Inc., 418 U.S. 323, 347 (1974).

the individual (the person testifying at court) – only occasionally was her maiden name used (and by maiden name, the name that she used while she was with Appellant nearly twenty years before) and her employer United Airlines referenced; the government never asserted that she was ever identified more specifically than that – either on Reddit or elsewhere on the internet (ROA.23-50714.428 and ROA.23-50714.466). Finally, the specific subreddits (ie. "focused discussion areas" within Reddit (ROA.23-50714.328)) where the stories could be found were locations likely filled with numerous other images of indecent and fantasy stories with no presumed bearing in fact – not a place where the currency of communication was factual content, where someone's reputation could be damaged by broadcasting a false statement.

### b) Appellant's speech is not speech "integral to criminal conduct"

The government also seemed to argue below that Appellant's speech is not protected because it is "integral to criminal conduct," but the only "criminal conduct" they cite is the "criminality" occurring under the same cyberstalking statute 18 USC § 2261A that bans his speech. This argument is tautological. Any law criminalizing speech would be self-justifying if that was all that was needed to be proved.

The Supreme Court, by contrast, has only found speech to be "integral to criminal conduct" in the cases of very limited types of speech where the content of the speech is inexorably intertwined with *another* criminal enterprise: with child pornography, for example, the court analyzed the way in which prohibiting the content "is intrinsically related to the sexual abuse of children" – being a "permanent record of the children's participation and the harm to the child" and reasoning that the "distribution network […] must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled." *New York v. Ferber*, 458 U.S. 747, 759 (1988). With respect to 18 USC § 2261A, a similar type of analysis – determining what type of criminal conduct this type of speech is fundamentally linked to – has never been done: until such analysis, a new category of speech cannot be proscribed from protection under the First Amendment. The Supreme Court has always expressed extreme hesitance when considering the proscription of new categories (see for example their discussion of the lack of authority to set a new category for depiction of animal cruelty in *United States v. Stevens* 559 U.S. 460, 468, 471 (2010)).

3.      *Arguments that Appellant's speech was private and therefore not eligible for First Amendment protections are not persuasive*

In their reply to Appellant's Motion to Dismiss, the government argued that Appellant's speech should not be protected by the First Amendment because it "concerned private or sexually explicit matters" (ROA.23-50714.98). Elaborating their argument, they cite rationale from other circuit court decisions on cases of cyberstalking: "where matters of purely private significance are at issue, First Amendment protections are often less rigorous . . . because restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest." (ROA.23-50714.100, citing *United States v. Petrovic*, 701 F.3d 849, 56 (8th Cir. 2012) (internal quotations omitted)).

Supreme Court precedent, however, does not distinguish "speech on non-public matters" as something meriting proscription from First Amendment protection; in fact, they have expressly said the opposite: "We in no sense suggest that speech on private matters fall into one of the narrow and well-defined classes of expression which carries so little value, such as obscenity, that the State can prohibit and punish such expression by all persons in its jurisdiction." *Connick v. Myers*, 461 U.S. 138, 147 (1982).

Only in certain very particular scenarios has the Supreme Court found it fit to make a distinction between speech on public matters versus speech on private matters. The distinction was invoked in cases of civil defamation (defamation of public figures required a different state-of-mind standard than that for private

individuals, see *Gertz v. Robert Welch*, Inc., 418 U.S. 323, 347 (1974)), cases of employment disputes involving public employees speaking out on public matters (see *Rankin v. McPherson*, 483 U.S. 378, 107 S. Ct. 2891 (1987)), as well as civil cases of tort liability for intentional-infliction-of-emotional-distress damages (see *Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207 (2011)).

To reiterate, the distinction regarding public-matter versus private-matter speech has never been invoked as a way of proscribing an entirely new class of unprotected speech – and thus it cannot be used as a sole predicate to justify the prosecution of Appellant without violating the First Amendment. Further, an extension of this distinction between speech on private matters vs. public matters into the realm of criminal prosecution would not be in keeping with the types of civil-damages cases where it was previously invoked by the Supreme Court. Indeed, the Supreme Court has historically been wary of a broad or vague application of criminal punishment in the realm of pure speech for it may have far-reaching, unintended consequences in terms of self-censorship: "the severity of criminal sanctions may well cause speakers to remain silent rather than communicate even *arguably* unlawful words, ideas, and images." *Reno v. ACLU*, 521 U.S. 844, 872 117 S. Ct. 2329 (1997), emphasis added.

Again, *Counterman v. Colorado* is instructive with respect to the way the Court has treated criminal cases such as Appellant's: in assessing the cyberstalking

charge in *Counterman*, the Court made no distinction with respect to whether the defendant's speech concerned public or private matters. Rather, they focused on whether the speech constituted a "true threat" (one of the historically proscribed categories of speech not deserving of First Amendment protection). *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106 (2023). Using this analysis, Appellant's speech would be protected by the First Amendment and should not be punished criminally.

Protecting the freedom of speech is enshrined in the First Amendment, prohibiting Congress from enacting laws that would "abridg[e]" this freedom. U.S. CONST. AM. I. The United States Supreme Court has shown that this freedom is an important enough right that even speech which may be vehemently disagreeable, or offensive, should be protected. *Texas v. Johnson,* 491 U.S. 397, 414 (1988). Speech "remains protected even when it may 'stir people to action,' 'move them to tears,' or 'inflict great pain.'" *Sorrell v. IMS Health*, Inc., 564 U.S. 552, 576 (2011).

Courts have determined that, historically, only certain classes of speech acts are not afforded the same protection as the rest: *Chaplinsky v. New Hampshire* identified "the lewd and obscene, the profane, the libelous, the insulting or 'fighting' words—those by which their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). *United States v. Stevens* considered "speech integral to criminal conduct" as

another. *United States v. Stevens* <u>559 U.S. 460</u> (2010). Because, as shown above, Appellant's speech does not fall into any of these categories, it is protected by the First Amendment and should not be punished criminally.

## II. <u>18 USC § 2261A(2)(B)</u> Is Unconstitutionally Vague in That It Does Not Define Not Provide Any Standard to Determine What Constitutes Substantial Emotional Distress

### A.     Standard of Review

Whether a criminal statute is unconstitutionally vague is a question of law, which is reviewed de novo. *United States v. Monroe*, <u>178 F.3d 304, 308</u> (5th Cir. 1999). Appellant preserved this issue by attempting to have the indictment dismissed on these grounds. (<u>ROA.23-50714.105-8</u>) The denial of a motion to dismiss is reviewed *de novo*. See *United States v. Arrieta*, <u>862 F.3d 512, 514</u> (5th Cir. 2017); *United States v. Clark*, <u>582 F.3d 607, 612</u> (5th Cir. 2009).

### B.     Argument

The Due Process Clause of the Fifth Amendment states that, "[n]o persons shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. Am. V. "[T]he Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary

enforcement." *Johnson v. United States*, 576 U.S. 591, 595, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015).

While it is true that typically, vagueness challenges are evaluated in light of the facts-at-hand, this is not so when a statute implicates First Amendment rights. *Chapman v. United States*, 500 U.S. 453 (1991) *citing United States v. Powell*, 423 U.S. 87, 92 (1975); *Abell v. Potomac Ins. Co.*, 946 F.2d 1160 (5th Cir. 1991). The statute herein implicates First Amendment rights, and thus is subject to a facial vagueness challenge. *See United States v. Ackell*, 907 F.3d 67, 77 (1st Cir. 2018) (acknowledging in the context of a different doctrinal challenge that cyberstalking could implicate the First Amendment). Thus, it is proper for Appellant to argue that the reasonable expectation of substantial emotional distress prong of the cyberstalking is unconstitutionally vague on its face, in addition to as it is applied to Appellant's course of conduct.

1. *18 USC § 2261A(2)(B) is vague on its face with respect to what constitutes substantial emotional distress*

18 USC § 2261A(2)(B) criminalizes courses of conduct "reasonably expected to cause substantial emotional distress." This language requires a reasonable person to make two subjective decisions: First, they must imagine the abstraction of what their course of conduct might lead to in an idealized scenario. Additionally, the

reasonable person has to determine whether the outcome they are imagining would qualify as "substantial emotional distress" (an inherently subjective concept with no definition provided by the statute).

In *Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551 (2015), the Supreme Court struck down the Armed Career Criminal Act's residual clause used for administering elevated sentences – on a similar basis. In determining what constituted a violent crime, the requirement that everyday people "imagine how the idealized ordinary case of the crime" would play out (an abstract scenario), as well as assess "how much risk it takes for a crime to qualify as a violent felony" (a subjective determination of severity within this abstract scenario), was too onerous and led to vague application of the law. *Johnson v. United States*, 576 U.S. 591, 598 135 S. Ct. 2551, 2558 (2015). *See also Sessions v. Dimaya*, 138 S.Ct. 1204 (2018).

Because 18 USC § 2261A(2)(B) has been written in such a manner as to leave ordinary people guessing at the meaning of what constitutes substantial emotional distress, Appellant's fundamental rights to Due Process are violated in that he was prosecuted under a statute that is both facially vague and that implicates First Amendment problems.

Appellant's vagueness challenge is fundamentally different from the vagueness challenge previously rejected by this Court in *United States v. Conlan*, 786 F.3d 380, (5th Cir. 2015). In *Conlan,* on plain error review, this Court considered

the question of whether 2261A was unconstitutionally vague because it failed to define neither harass nor intimidate in the context of a "year-long campaign of escalating sexual innuendo, threats of physical violence, and unwanted contacts with [the complaining witness'] family, friends, and colleagues culminating in an interstate trip to his victim's house." *Id.* at 385.

Appellant's case is different in a number of respects, not the least of which being that *Conlan*'s conduct rose to a level that triggered not just the "emotional distress" aspect of the statute but the others as well, as he engaged in a campaign of threats of physical violence and direct contact. *Id.* at 385. Appellant's challenge, however, turns on whether the statute avoids vagueness when it requires someone to determine a *hypothetical* "substantial emotional distress" based on imagined "reasonable expectations" of a scenario abstractly. Secondly, the 2013 version of the statute under which *Conlan* was tried did not include the language regarding conduct "*reasonably expected to cause* substantial emotional distress," which was relied on by the government in their closing argument of the present case (EROA 23-50714.468)– in *Conlan*, the conduct had to *actually* cause "substantial emotional

distress" to enable prosecution.[6] Third, the Supreme Court's relevant opinion in *Johnson v. United States* had only just been released at the time of *Conlan* and thus was not part of the Fifth Circuit's consideration. Finally, prosecution of Appellant solely under the reasonable expectation of substantial emotional distress is distinct from *Conlan* and highlights the potential for a vague application of law that the provisions of 18 USC § 2261A(2)(B) enable.

### 2. *18 USC § 2261A(2)(B) is vague as-applied to Appellant's course of conduct.*

A course of conduct involving a reasonable expectation of substantial emotional distress articulated in 18 USC § 2261A(2)(B) is usually prosecuted in the context of direct contact that threatens a victim's physical and psychological well-being. In that context, such a prosecution may not reveal a vague application of law: for example, in the case of a threat to someone's safety or the safety of their family

---

[6] The 2013 version of 18 USC § 2261A provided that, emphasis added: "Whoever— […]
"(2) with the intent—
"(A) to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State or tribal jurisdiction or within the special maritime and territorial jurisdiction of the United States; […]
uses the mail, any interactive computer service, or any facility of interstate or foreign commerce *to engage in a course of conduct that causes substantial emotional distress* to that person or places that person in reasonable fear of the death of, or serious bodily injury to, any of the persons described in clauses (i) through (iii) of subparagraph (B)"

members, a reasonable expectation of substantial emotional distress would be applied to conduct such that it may not clearly demonstrate the statute-element's vagueness. However, when applied to Appellant's particular course of conduct (which contains none of the direct contact or threatening conduct outlined above), the line defining the reasonable-expectations-of-substantial-emotional-distress standard specified by USC § 2261A(2)(B) becomes impossible to discern, and such prosecution relying exclusively on that element of USC § 2261A(2)(B) violates the Due Process Clause of the Fifth Amendment.

The Due Process violation is the result of the open-ended phraseology of the third required element of 18 USC § 2261A(2)(B) which requires only that a course of conduct be "*reasonably expected*" to cause substantial emotional distress. This vague element allowed Appellant to be prosecuted in a manner "so standardless that it [could only be described as] arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556, 192 L. Ed. 2d 569 (2015), citation omitted.

First, leveraging the vague terms of the statute, the government prosecuted this case on the basis that Appellant should have "reasonably expected" that the Reddit postings would be discovered by the complaining witness. Appellant never sent these posts to YT. He never directed her to them, never sent them to her colleagues or family members. Indeed, YT only became aware of these posts after, according to her, a "close friend" alerted her to the posts which caused her to launch

her own exhaustive investigation. (EROA 23-50714.410). In *Conlan*, where the 2013 terms of the statute only allowed for prosecution of conduct that *definitively* caused substantial emotional distress, prosecutors had clearer bearing with which to guide their prosecution, and the result was the prosecution of a much more definite infraction: the defendant in *Conlan* took many affirmative steps to guarantee that their victim was aware of their conduct.

Secondly, Appellant's public posts were not explicitly linked to the victim's identity – a determination that the postings were prosecutable was only possible through the hopelessly vague analysis authorized by the statute's language regarding "reasonable expect[ations]" and "substantial emotional distress." The postings did not identify YT by her present name, effectively eliminating the possibility that *anyone* except YT would know that the posts were referencing her. While some posts did reference YT's profession, YT is employed by a major national airline. YT was also approximately 20 years older than she was when the photographs were taken, even further reducing the chance that her likeness could be connected to her identity. The possibility that anyone coming across these posts would be able to connect them to her has diminished significantly over time. Only via the abstract determinations authorized by the vague terms of the statute was a course of conduct not linked to the victim's identity prosecutable.

Finally, the vague terms of the statute enabled prosecutors to single out Appellant's anonymous re-postings of this content among other similar postings on Reddit. The photographs of YT that Appellant reposted were more than two decades old and had already been in public circulation anonymously to the internet. Indeed, the photographs in question were so familiar to Reddit users that when Appellant published a video one of the users complained that the video is "from five years ago." (EROA 23-50714.422) These photographs were also being reposted by accounts not controlled by Appellant. (EROA 23-50714.365). Only when some of the posts were linked to Appellant's IP address did the government begin to identify them as something "reasonably expected" to cause substantial distress. The terms of the statute thus allowed for a prosecution based on vague grounds: it was not the publication of the photographs themselves that was criminal; it was who was posting the photographs that made the conduct criminal (in the eyes of the government), and Appellant would have to be aware of this distinction.

"The prohibition of vagueness in criminal statutes,' […] is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law.'" *Sessions v. Dimaya*, 584 U.S. 148, 154, 138 S. Ct. 1204 (2018). The doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges. *See Kolender* v. *Lawson*, 461 U. S. 352, 357-358, 103 S. Ct. 1855 (1983). In

the present case, the statute's vague language involving "reasonably expectation[s]" of "substantial emotional distress" provided an impossible template from which to measure Appellant's conduct: the language of the statue provided little direction for how to view Appellant's anonymous postings – a series of Reddit posts only loosely linked to the victim witness' identity, involving content already recirculating the internet. Thus, this was a vague application of the provisions of 18 USC § 2261A(2)(B), and it is this exact type of arbitrary prosecution that *Johnson* and its progeny prohibit. Therefore, Appellant's conviction should be vacated.

## III.   The Erroneous Admission of Prior Bad Acts Evidence Deprived Appellant of His Due Process Rights

### A.   Standard of Review

The denial of a motion for mistrial is reviewed for an abuse of discretion. See *United States v. Mitchell*, 166 F.3d 748 (5th Cir. 1999). The district court's ruling on the admissibility of 404(b) evidence is also reviewed for an abuse of discretion. See *United States v. Hernandez-Guevara*, 162 F.3d 863, 869 (5th Cir. 1998). The lower court's erroneous admission of the 404(b) evidence was preserved by counsel's response to the government's notice (ROA.23-50714.248) and counsel's objections at trial (ROA.23-50714.402).

### B.   Discussion

The evidence of a defendant's past crimes and wrongdoings is only admissible after it has undergone a careful evaluation – one that looks at the possible evidence beyond just a mere test of its relevance. Prior bad acts evidence only merits inclusion if it helps prove specific elements of the prosecution's case, and, in addition, there must be a careful weighing of its probative value against its unfair prejudice. *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir. 1978). Any past-crimes/wrongdoings evidence that fails this careful test risks "weigh[ing] too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 476 69 S. Ct. 213 (1948).

1. *The government exceeded the boundaries of admissible prior bad acts evidence as authorized by the court's balancing analysis*

After receiving notice that the Government sought the inclusion of past-crimes-and-wrongdoings evidence, Appellant objected that the inclusion of this evidence had a significant chance of "confusing the issues, misleading the jury, or resulting in unfair prejudice" to a degree that would outweigh any potential probative value. (ROA.23-50714.250).

The indictment in this case charged that a course of conduct occurring between May 2020 and September 2020 had "caused, attempted to cause, or would

reasonably be expected to cause substantial emotional distress." (ROA.23-50714.14). Appellant argued that, if not careful, the jury could misinterpret these past-wrongdoings-or-past-crimes evidence as being part of the current "course of conduct" under review. (ROA.23-50714.250). To wit, Appellant argued: only the postings to Reddit that occurred between May 2020 and September 2020 should form the "course of conduct" under consideration. Discussion of the previous postings and related conduct (which had already received criminal punishment and sentencing) risked improperly broadening the scope of his indicted "course of conduct," confusing for the jury exactly what it was they were to evaluate and improperly prejudicing their deliberations.

The trial court allowed, over Appellant's objection, some extrinsic prior crimes/wrongdoings evidence into the proceedings. In response to Appellant's objections to the use of this evidence, and in discussing and over-ruling each objection, the lower court agreed with counsel for Government that this evidence was to be included only for purposes of establishing "intent." (ROA.23-50714.369-370, ROA.23-50714.375-376, and ROA.23-50714.369-399).

The legal framework codified by Federal Rule of Evidence 404(b) allows for the inclusion of past-crimes-and-wrongdoings evidence for purposes such as "such as proving motive [or] intent" only if "evidence [is] relevant to an issue other than

the defendant's character […] and the probative value of the evidence [is not] substantially outweighed by undue prejudice." Fed. R. Evid. 404(b).

The balancing test that this type of evidence undergoes is unique: the probative worth of a piece of evidence is assessed on an "incremental" basis, "not an absolute" one. *United States v. Beechum*, 582 F.2d 898, 914 (5th Cir. 1978). We view the probative value of a particular piece of evidence within the context of the entire corpus of evidence in the case, and we analyze "'the marginal probative value' of the evidence relative to other evidence in the case." *Old Chief v. United States*, 519 U.S. 172, 185 117 S. Ct. 644 (1997) (cleaned up). The Supreme Court suggests that, in balancing probative worth versus prejudice, a judge may think about the whole corpus of evidence, consider the alternative ways in which a prosecution could present a case, and "apply some discount to the probative value of an item of evidence when faced with less risky alternative proof going to the same point." *Id.* at 183.

Midway through the government's direct examination of the complaining witness, it appeared that the trial judge had made such a determination and found that there had been sufficient inclusion of past-crimes/past-wrongdoings testimony: there was limited "marginal probative worth" left to be had by including more of it. By this point in the Appellee's case, the jury had already heard about Appellant's similar acts of posting during 2013-2016 and had seen introduced into evidence his

guilty plea in the 2016 cyberstalking case; these items were thoroughly reviewed during Agent Thompson's testimony. (ROA.23-50714.369-379).

When Appellee sought to revisit these same past acts during the direct examination of YT, the trial court suggested that Appellee limit her questioning in a particular way – likely as a way to find "a less risky alternative" in the interest of avoiding undue prejudice (*Ibid.* at 183):

> So let's focus just on [intent] though. Let's not go back into what else was found. You know, ask her the question. She said that these images were found and just ask her, did you ask him to stop it and how did that make you feel, and then move on. (ROA.23-50714.399).

Counsel for the government, however, took a different route in her questioning of YT – eliciting a lengthy discussion of past conduct: allegations of Appellant's unauthorized photographing of YT, the civil injunction she sought when she encountered the photographs online, and a detailed recitation of the events surrounding Appellant's previous criminal case. (ROA.23-50714.400-409). Throughout this examination, Appellant's counsel objected, but the trial court – now seeming to go back on the determination they had just made regarding the extent of the questioning – allowed the testimony to go on, all the while striving to continue specifying that this testimony should only be used to judge "state of mind" and "intent." (ROA.23-50714.401 and ROA.23-50714.406).

While the Supreme Court has reiterated the time-honored principal that the prosecution is "entitled to prove its case by evidence of its own choice" and has said that narrative testimony helps to tell a story "with descriptive richness" that adds to the evidentiary weight a piece of evidence (see *Old Chief v. United States*, 519 U.S. 172, 188 117 S. Ct. 644 (1997)), here the trial court had already suggested a path of examination that would have minimized undue prejudice to Appellant. Instead, the Appellee's counsel filled the record with additional granularity related to the past-conduct testimony such that this part of their case now improperly overshadowed the original "course of conduct" occurring between May 2020 and September 2020 that was supposed to form the basis of the jury's deliberation.

When Appellant requested a mistrial following this testimony, this request was denied. (ROA.23-50714.409). The request for a mistrial was reasonable at this point – because as shown below – in this case "there [was] a significant possibility that the prejudicial evidence had a substantial impact upon the jury verdict, viewed in light of the entire record." *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998).

2. *The past crimes and wrongdoings evidence were misinterpreted as forming part of the "course of conduct" under analysis in the jury's deliberations and as such deprived Appellant of his Due Process rights and right to be free from Double Jeopardy*

As Appellant warned might happen in his response to the Government's notice of their intent to use past crimes/wrongdoings evidence (ROA.23-50714.250), the

cumulative inclusion of this evidence over the course of the trial muddied the record such that the May 2020-September 2020 "course of conduct" was now no longer the primary thing on the members of the jury's minds during their deliberations.

During testimony, although the government did some work signaling the temporal shifts between the prior conduct in 2006-2013 and new conduct in 2020, the record reflects that there was less effort to signal which conduct in particular should merit the jury's scrutiny as the "course of conduct" as a part of Appellant's conviction in this case. In their pre-trial initial declaration to the court of their desire to use this evidence, the Government hypothesized that this past conduct might actually be considered "intrinsic" to the current criminal investigation or "part of a single criminal episode" with his indicted May 2020-September 2020 conduct. (ROA.23-50714.183). Unfortunately, this confusion around the status of this past-crimes evidence permeated the trial setting as well.

By blurring the distinction between past conduct and current conduct under indictment, this trial posed serious issues affecting Appellant's fundamental Due Process rights. These concerns were raised initially in Appellant's response to the government about their intent to use this evidence: adding the past conduct into the conduct warranting the jury's consideration would constitute a "constructive indictment" – described in caselaw as a scenario in which "the government changes its theory at trial allowing the jury to convict on a broader basis than alleged in the

indictment" (ROA.23-50714.251, quoting *United States v. Stanford,* 805 F.3d 557 (8th Cir. 2015)); and it also would violate his double jeopardy rights – trying him for some of the same course of conduct for which he was already convicted (see ROA.23-50714.251, citing *United States v. Conlan* 786 F.3d 380 (5th Cir. 2015)).

In a situation such as this, "prejudicial remark[s] […] may be rendered harmless by curative instructions to the jury." *United States v. Nguyen*, 28 F.3d 477, 483 (5th Cir. 1994). Appellant proposed to the court jury instructions that could cure the error, with language that would more explicitly exclude those prior bad acts from consideration in the course of conduct; specifically, he requested that the date-range of the course of conduct be clearly delineated. (ROA.23-50714.267). Earlier in the trial, the trial judge did use to dates to specify the "course of conduct" under review, but his misplaced emphasis colored the deliberations:

> This defendant is only on trial for acts allegedly committed between May and September of 2020. So that's all you are to consider when you go to the deliberation room is *whether he committed any of these acts between May of 2020 and September of 2020*. (ROA.23-50714.375, emphasis added).

The fundamental question should not have been "whether he committed any of these acts" during this period but whether the acts during this particular period *added up to enough* to form a "course of conduct" that "cause[d] […] or would be reasonably expected to cause substantial emotional distress."

Worse, the jury instructions that the trial judge later ended up providing to the jury did not clearly discuss the temporality of Appellant's various actions discussed at trial and which specifically they should focus on; buried within the document this was the only included guidance on the issue of 404(b) evidence:

> You have heard evidence of acts of the defendant which may be similar to those charged in the indictment, but which were committed on other occasions. You must not consider this evidence in deciding if the defendant committed the acts charged in the indictment. However, you may consider this evidence for other, very limited, purposes.
>
> If you find beyond a reasonable doubt from other evidence in this case that the defendant did commit the acts charged in the indictment, then you may consider evidence of the similar acts allegedly committed on other occasions to determine:
>
> Whether the defendant had the state of mind or intent necessary to commit the crime charged in the indictment. These are the limited purposes for which any evidence of other similar acts may be considered. (ROA.23-50714.275)

Compared to the defense's version of the same (ROA.23-50714.267), the thrust of discussion is far different – the language regarding "similar acts" in the judge's version could refer to many things in the jury-members' minds, leaving the jury liable to include the consideration of some of the postings to Reddit and the other bad acts that occurred prior to May 2020, as elements in their conception of the

"course of conduct" that "cause[d] [...] or would be reasonably expected to cause substantial emotional distress."

Appellant preserved this error by asking for a mistrial earlier in the proceeding when the inclusion of 404(b) evidence became excessive (ROA.23-50714.409); he also preserved the error by proposing his own jury instructions prior to the judge's issuance of theirs and by requesting the inclusion of "dates" circumscribing the course of conduct for the jury's consideration earlier in the trial. (ROA.23-50714.370). The dates were included in the Trial Court's instructions mid-trial about the extrinsic evidence they were about to be presented (see above discussion), but the final jury instruction did not include their explicit reference. The parties discussed the two competing jury instructions one more time prior to submission to the jury, but the Court agreed with the Government that the "similar acts limiting instruction the Court has already included accomplishes the purpose that Mr. Locke is requesting." (ROA.23-50714.448). As shown, however, the issue is not insignificant and had been raised many times throughout the trial. We ask the court to review this issue for abuse of discretion.

## IV. The Evidence Below Was Insufficient to Sustain Appellant's Conviction

## A. Standard of Review

The denial of a motion for judgment of acquittal is reviewed *de novo*. *United States v. Ragsdale*, 426 F.3d 765, 770 (5th Cir. 2005) and *United States v. Floyd*, 343

F.3d 363 (5th Cir. 2003). This issue was preserved by Appellant's seeking judgment as a matter of law at the close of the government's case-in-chief (ROA.23-50714.432) as well as his post-trial Motion for a Judgment of Acquittal. (ROA.23-50714.284).

## B.    Discussion

The test for sufficiency for evidence would be as follows: reviewing "the evidence and all reasonable inferences in [a] light most favorable to the prosecution," the court should decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vargas-Ocampo*, 747 F.3d 299 (5th Cir. 2014), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781 (1979).

Appellant's "course of conduct" forming the basis of his indictment (and, ultimately, his conviction) consisted exclusively of speech – a series of public anonymous posts to Reddit that contained photos of YT that were two decades old and had previously been in circulation. None of the posts used YT's present name, and only some of them referred to her employer (which as of 2022 had nearly 100,000 employees).[7] Nevertheless, the Government, in presenting their case to the

---

[7] United Airlines, *Workforce data including labor relations and employee demographics*, available at https://crreport.united.com/data/workforce (last accessed March 19, 2024), cited pursuant to Fed. R. Evid. 201(b)(2)

jury, did not try to show how any of Appellant's allegedly offending posts could evade First Amendment protection – for example, they did not try to demonstrate how the posts might be legally classified as "obscene" under a standard set by the Supreme Court (as part of the test, *Miller v. California* indeed asks a "trier of fact" to make such determinations, "applying contemporary community standards"). *Miller v. California*, <u>413 U.S. 15, 24</u>, <u>93 S. Ct. 2607</u> (1973).

To be clear, precedent shows that, to prosecute a course of conduct comprised of speech under <u>18 USC § 2261A(2)(B)</u>, it first must be shown that the speech is proscribable from First Amendment protection. (See, for example, discussion above regarding *Counterman v. Colorado* requiring the speech to meet a "true threat" standard and also *United States v. Ackell*, <u>907 F.3d 67, 77</u>, (1st Cir. 2018), which notes that, when it comes to this statute, "as-applied challenges" may be necessary to "properly safeguard the rights that the First Amendment enshrines.")

However, even measuring the evidence presented *just against the terms the statute* <u>18 USC § 2261A(2)(B)</u> itself -- the evidence was *still* not sufficient. Because of this lack of evidence, after the trial Appellant submitted a motion for a judgment of acquittal, but the motion was denied by the trial judge. (<u>ROA.23-50714.284</u> and <u>ROA.23-50714.293</u>). However, this issue deserves analysis again.

Thus, Appellee would need to provide sufficient evidence to prove all aspects of the statute: that (1) Appellant had the requisite intent specified by the statute; that

(2) he used an "interactive computer service or electronic communication service or electronic communication system of interstate commerce" to engage in a course of conduct; and that (3) Appellant's course of conduct "cause[d], attempt[ed] to cause, or would be reasonably expected to cause substantial emotional distress" to his alleged victim. 18 USC § 2261A(2).

1.   *Sufficient evidence did not exist to find requisite intent contemplated by 18 USC § 2261A(2)(B)*

To be clear, *Counterman* specifies that to prosecute speech under a cyberstalking law, it is required that Appellant have a reckless intent to threaten a victim. As stated above, demonstrated, the government failed to establish that Appellant's conduct met this standard set in *Counterman.*

But even under the lower (read: unconstitutional) level of proof of intent that the text of 18 USC § 2261A(2)(B) itself specifies, Appellee did not present sufficient evidence so that a trier of fact to convict beyond a reasonable doubt. The statute's intent requirement contains a long list of verbs[8] specifying possible types of "intent" that could make a course of conduct prosecutable – as stated previously, the only

---

[8] For reference here is the full list from 18 USC § 2261A(2)(B): "with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person"

conceivable item meriting review is intent to harass given that the postings to Reddit contained no violent or physically threatening language at all.

Upon closer inspection: an alleged intent to "harass" in this case would not hold up to scrutiny. Diametrically opposed to a plain-reading of what an intent to "harass" might mean (ie. "to disturb persistently; torment, as with troubles or cares; bother continually; pester; persecute"), the posts were not directed to YT; they were posted in a subreddit that the alleged victim only found out about when a "close family friend" provided a link to the images. (ROA.23-50714.409), *United States v. Shrader*, 675 F.3d 300 (4th Cir. 2012), citation omitted, quoted within *United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015). Only after a week-long copious search of the internet was the extent of Appellant's alleged course of content discovered. (ROA.23-50714.410). The posts therefore could not be said to be intended to "harass": on the contrary, the record clearly shows that they might not have even been intended to be found by YT at all.

Appellant's case can be compared here to other examples prosecuted under cyberstalking statutes because the difference is stark: in *United States v. Conlan*, for example, intent was ascribable to the course of conduct because the defendant "escalated his behavior by contacting [the victim]'s colleagues, church leaders, and father, culminating in an interstate trip to her house armed with a handgun and riot stick." *United States v. Conlan*, 786 F.3d 380, 385 (5th Cir. 2015). Intent to harass

(and worse) was conveyed through increasing forms of direct contact online (and later even in person).

In Appellant's case, by contrast, the postings were limited to public Reddit forums, never directly addressed to his alleged victim, and in fact his alleged *modus operandi* consisted of taking down the postings afterwards (making them less likely to be found by YT). (ROA.23-50714.383). Without direct contact (online or otherwise) initiated by Appellant in the alleged course of conduct, a rational trier of fact would not be able find an intent to "harass". Thus, Appellee's case lacks one of the three necessary elements of 18 USC § 2261A(2)(B) even in a light most favorable to the government.

2. *There was not sufficient evidence to find "substantial emotional distress" under 18 USC § 2261A(2)(B)*

18 USC § 2261A(2)(B) would also require that Appellant's course of conduct "cause[d], attempt[ed] to cause, or would be reasonably expected to cause substantial emotional distress." The record shows that there is not sufficient evidence for a "rational trier of fact" to find this element of the criminal statute beyond a reasonable doubt either.

First, the reaction of YT upon the discovery of Appellant's postings (and the law enforcement's processing of this reaction) is not one that suggests substantial emotional distress. Notably, YT and law enforcement did not attempt to remove the

postings: Agent Thompson did not contact Reddit to request their removal (ROA.23-50714.381); he did not contact the moderators managing the subreddits where the postings were located either. (ROA.23-50714.384). If the postings were indeed causing substantial emotional distress, this would have been the quickest way to minimize the pain and distress. However, Agent Thompson admitted that no one was "in grave danger or [experiencing] some sort of sense of physical urgency." (ROA.23-50714.390).

Second, Appellee relies heavily on the testimony of the victim-witness YT in their attempt to establish "substantial emotional distress," but they do not clearly show how it was this *current* set of actions between May 2020-September 2020 that led to the reaction the victim-witness said she experienced. When YT says, "it was the instant fear and disgust that opened that wound again" (ROA.23-50714.411), she is reacting to what she has found on the internet in 2020 – but it is *also* the unfortunate residual result of the previous postings, for which Appellant had already been tried and punished. Thus, Appellant's course of conduct during this new 2020 period cannot have been said to engender all of the response narrated within the testimony here.

In fact, Appellant had reason to believe that re-posting these images may not cause substantial emotional distress. The posts that Appellant made referred to a name that the complaining witness no longer went by. (ROA.23-50714.428) In the

years that had passed her appearance would surely have changed. Additionally, the images had been on the internet and were being re-published by others, seemingly without consequence from law enforcement. (ROA.23-50714.366) There is a difference between posting pictures that someone just took and re-publishing pictures that have been in the public sphere for more than a decade. The question is whether it was reasonable to expect that YT would figure out it was Appellant who was re-publishing those pictures and whether that discovery would cause substantial emotional distress.

## V. The Lower Court Erred When It Refused to Provide Appellant's Proposed Jury Instructions

### A. Standard

An appellate court reviews a lower court's refusal to provide an Appellant's proposed jury instructions on an abuse of discretion standard. *United States v. Strom*, 36 F.3d 1289 (5th Cir. 1994). This issue was preserved for review during counsel's colloquy with the lower court and the government stating expressly the reasons for the proffered instructions. (ROA.23-50714.448-451).

### B. Discussion

The lower court abused its discretion when it refused to provide the jury with two of Appellant's instructions: one with respect to the request for a limiting

instruction as set forth above in section *III*, *supra*, and the other with respect to Appellant's request for an instruction regarding intent. (ROA.23-50714.449).

Appellant's intent to, *inter alia*, harass YT in this case was a central pivot point around which the case resolved. The proposed instruction would have made clear that the postings themselves would need to have been made with the intent to harass YT and not for some other improper motive – as is required for a conviction under the cyberstalking statute. The instruction was requested given the concern that the jury might reasonably interpret instructions that did not adequately define intent in this particular context to mean that Appellant could be convicted if he intentionally made the Reddit posts as opposed to making the posts with intent to harass. (ROA.23-50714.276)

In the context of failing to give a requested instruction, reversal is required where "(1) the requested instruction is substantially correct; (2) the actual charge given to the jury did not substantially cover the content of the proposed instruction, and (3) the omission of the instruction would seriously impair the defendant's ability to present his defense." *United States v. Giraldi*, 86 F.3d 1368, 1376 (5th Cir. 1996). Here, each of these elements are met. As set forth below at the charge conferences, (1) and (2) are met.

As set out above, Appellant requested the following instruction:

To act with "intent" means to act with the specific intent or purpose of causing the desired result in an individual. It is not sufficient that an individual might or does foresee that such a result is a likely consequence of any action, but rather the individual must intend the specific result. In this context, the government must prove beyond a reasonable doubt that the Defendant intended to harass the complaining witness as opposed to being motivated by some other reason. It is not sufficient that the Defendant have some other bad or improper motive. (ROA.23-50714.267)

Such an instruction substantially captures the meaning of intent within this specific context, which is especially important as such an instruction would have ameliorated vagueness concerns that loom large here as discussed above.

Given that the government needed to prove an intent to harass in order to satisfy the minimum terms of 18 USC § 2261A(2)(B), the proposed instructions did not substantially cover what Appellant was seeking make clear to the jury: that it was not his intentional posting, but the intent to harass that was critical to their determination as opposed to some other improper motive.

This omission seriously impaired Appellant's ability to have his defense adequately considered by the jury in that it invited them to criminalize a different facet of Appellant's intent: to wit, the act of posting. The parties agree that Appellant did not make the Reddit posts recklessly or negligently, rather the dispute centers around Appellant's intent in making those posts. By not making it clear that the jury could not convict Appellant unless it found he had the latter intent, Appellant was significantly prejudiced, requiring reversal.

## **CONCLUSION**

In light of the foregoing, Appellant respectfully requests that this Court vacate

his conviction and remand for proceedings consistent with the Court's opinion.

Respectfully submitted,

**/s/** Shannon W. Locke
Shannon W. Locke
The Locke Law Group
Texas State Bar No. 24048623
15160 San Pedro Avenue
San Antonio, Texas 78232
(210) 229-8300 (Telephone)
(214) 229-8301 (Fax)

**CERTIFICATE OF SERVICE**

I, Shannon W. Locke, hereby certify that on this the 19th day of April, 2024, the Appellant's Brief was served via ECF to counsel for the Plaintiff-Appellee, Assistant U. S. Elizabeth Berenguer at Elizabeth.Berenguer@usdoj.gov. I further certify that: 1) all privacy redactions have been made pursuant to 5th Cir. Rule 25.2.13; 2) the electronic submission is an exact copy of the paper documents pursuant to 5th Cir. Rule 25.2.1; and 3) the document has been scanned for viruses with the most recent version of Norton Anti-virus and is free of viruses. Further I certify that I sent a paper copy via regular mail to Mr. Uhlenbrock.

/s/ Shannon W. Locke
Shannon W. Locke

# CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.2.7(c), the undersigned certifies this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).

1. Exclusive of the exempted portion in 5th Cir. R. 32.2.7(b)(3), this brief contains well fewer than 13,000 words.

2. This brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 (Version 2401) in Times New Roman typeface and 14-point font size.

3. The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.2.7, may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

/s/ Shannon W. Locke
Shannon W. Locke